IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK CHASE #S15790, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-13-SMY |
| | ) |
| WEXFORD HEALTH SOURCES, INC., et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Patrick Chase, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He claims the defendants were deliberately indifferent to his serious medical needs at Menard Correctional Center, in violation of the Eighth Amendment (Doc. 1).

The case is now before the Court for consideration of the motions for summary judgment filed by Defendants Erin Prange (Doc. 83) and Stephen Ritz, Mohammad Siddiqui, Wexford Health Sources, Inc., and Mary Jo Zimmer ("the Wexford Defendants") (Doc. 85). Plaintiff filed a response in opposition to the Wexford Defendants' motion (Doc. 92).[1] For the following reasons, the motions are **GRANTED**.

### Factual Background

The following relevant facts are undisputed unless otherwise noted: Sometime in February 2018, while incarcerated at Menard Correctional Center, Plaintiff was exercising and felt a stabbing pain in his knee. He also discovered a large bump in the area (Doc. 86-2 at 30:9-25).

---

[1] Plaintiff did not respond to Defendant Prange's motion within 30 days and has therefore waived his response. *See* Local Rule 7.1(c)(1).

Page **1** of **7**

On April 29, 2018, Plaintiff first saw an unnamed registered nurse ("RN") and complained of a "ping pong size mass in left posterior knee" with a "throbbing" pain that had bothered him for approximately 1 month. The RN referred him to a medical doctor (Doc. 86-1, p. 66).

On May 16, 2018, Plaintiff saw another RN, who referred him to Dr. Siddiqui and prescribed Motrin (Doc. 86-1, p. 67). On May 23, 2018, Plaintiff was evaluated by Dr. Siddiqui, who checked his left knee and noted no swelling and a normal range of motion. Dr. Siddiqui prescribed muscle rub and ordered an x-ray for further evaluation (Doc. 86-1, p. 68). An x-ray was performed of Plaintiff's left knee on June 7, 2018, at OneRadiology in Normal, Illinois, which showed, "The bony alignment is normal and there is no acute bony fracture or dislocation. Evaluation of the Baker's cyst may be performed using ultrasound examination of the popliteal fossa" (Doc. 86-1, p. 270).

On October 14, 2018, Plaintiff went to the clinic and saw another nurse, who prescribed Ibuprofen and referred him to see a doctor (Doc. 86-1, pp. 70). He saw Dr. Siddiquie on October 19, 2018, who noted that the June 2018 X-ray confirmed the diagnosis of a Baker's cyst, referred Plaintiff for an ultrasound, and ordered 500 mg of Naproxen (Doc. 86-1, p. 71).

On October 26, 2018, Dr. Ritz and Dr. Siddiqui performed a collegial review regarding the ultrasound referral and established an alternate treatment plan of physical therapy and medications (Doc. 86-1, pp. 63-65). They noted, "Patient is not a surgical candidate at this time. ATP made to consider PT and continue conservative management onsite with activity modifications and weight loss if applicable" (Doc. 86-1, p. 63). Plaintiff attended physical therapy on January 31, 2019 and received Naproxen in March 2019 (Doc. 86-1, pp. 76, 165).

On May 11, 2019, Plaintiff saw NP Mary Jo Zimmer, who noted that Plaintiff reported the cyst had not affected his gait (Doc. 86-1, p. 77). Zimmer did not see Plaintiff again until June 25,

2019, when she noticed he had "difficulty walking" and referred him to an orthopedic surgeon (Doc. 86-1, pp. 82, 85). Dr. Ritz approved the referral to an orthopedic surgeon on June 28, 2019 (Doc. 86-1, p. 83).

During his deposition taken on February 6, 2022, Plaintiff testified that he has obtained outside opinions from an orthopedic surgeon and that his treatment is ongoing (Doc. 86-2 at 24:3-15). According to Plaintiff, the cyst has nerve tissue surrounding it that would complicate any removal or direct intervention (Doc. 86-2 at 25:1-5). If all other treatment fails, the doctors would "have to," but do not "want to," remove the cyst (Doc. 86-2 at 25:6-12). Several providers noted that even if they drained the cyst, it could return (Doc. 86-2 at 33:12-15). Before filing suit, he had been seen by an orthopedic specialist, received a nerve injection, taken medications including pain medications, and had x-rays and an ultrasound taken (Doc. 86-2 at 48:9-22).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact — that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger,* 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). A plaintiff asserting a claim of deliberate indifference to

medical needs must offer evidence that he suffered from an objectively serious medical condition, and that the defendant actually knew of and disregarded a substantial risk of harm. *Murphy v. Wexford Health Sources Inc.,* 962 F.3d 911, 915 (7th Cir. 2020). Here, Defendants argue that Plaintiff's cyst was not an objectively serious medical condition, and that they did not disregard a substantial risk of harm to him from his cyst.

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would perceive the need for a doctor's attention." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Though this typically refers to an "acute" problem (e.g. a fracture or a wound), chronic or degenerative conditions that may escalate if not treated properly can also be objectively serious. *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016). Prison officials are not excused from treating chronic or degenerative conditions simply because the risks of not treating those injuries "reman latent or have not yet reached the point of causing acute or life-threatening injuries." *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). A "broad range of medical conditions" may be sufficient to meet the objective part of the deliberate-indifference test. *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases).

A reasonable jury could that Plaintiff's Baker's cyst was an objectively serious medical condition, as there is evidence that it was persistently painful and required frequent treatment, including diagnostic tests and physical therapy. However, the evidence on record is insufficient to satisfy the second element.

A medical professional displays deliberate indifference only if her decisions/actions represent a substantial departure from accepted professional judgment, practice, or standards. *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 458 (7th Cir. 2020). Courts look to the

"totality of an inmate's medical care" to determine "whether that care evidences deliberate indifference to serious medical needs." *Lisle v. Welborn,* 933 F.3d 705, 716 (7th Cir. 2019). Based on the evidence, no reasonable jury could conclude that Dr. Ritz, Dr. Siddiqui, or NP Mary Jo Zimmer were deliberately indifferent to Plaintiff's medical needs.

Upon his initial evaluation, Dr. Siddiqui immediately ordered an x-ray and subsequently an ultrasound. He prescribed Naproxen for pain, and ultimately referred him to physical therapy. Dr. Ritz, in consultation with Dr. Siddiqui, referred Plaintiff to an orthopedic surgeon. After only two visits, NP Zimmer referred Plaintiff to an orthopedic surgeon as well. Collectively, Dr. Ritz, Dr. Siddiqui, and NP Mary Jo Zimmer consistently evaluated Plaintiff's complaints, tried different medications, referred him for imaging studies, ordered physical therapy, and eventually sent Plaintiff offsite for specialty care.

While Plaintiff argues these medical professionals could have provided him with different treatment, such as having the cyst drained or referring him to another orthopedic clinic, the Eighth Amendment does them to provide specific treatment or treatment of Plaintiff's choice. *Forbes v. Edgar*, 112 F.3d 262, 266–67 (7th Cir. 1997). What is determinative is that no jury could reasonably conclude that the actions of Dr. Ritz, Dr. Siddiqui, and NP Mary Jo Zimmer were a substantial departure from accepted medical standards. *Donald,* 982 F.3d at 458. Plaintiff's argument that the cyst could have been treated more effectively sooner, and that Wexford has a "wait 'em out" policy of administering minor, conservative treatments before providing more significant care (Doc. 92, pp. 6-8), is unavailing as well. At best, the evidence could support potential negligence on the part of his providers, not deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality

of care was substandard to the point of negligence or malpractice); *see also*, *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (mere negligence or even gross negligence does not constitute deliberate indifference as it is not a medical malpractice standard).

Given the above conclusions, Wexford cannot be held liable for deliberate indifference based on its responsibility for its individual providers. *Pyles v. Fahim,* 771 F.3d 403, 412 (7th Cir. 2014) (Wexford cannot be held liable for damages because there is no underlying constitutional violation by its doctors). Nor is there evidence that Wexford maintained a policy or widespread practice of refusing or making it difficult to obtain treatment for a cyst at Menard (Doc. 86-2 at 48:9-22). *Glisson v. Indiana Dep't of Corr.,* 849 F.3d 372, 378-79 (7th Cir. 2017) (A prison's medical contractor can be held liable under § 1983 for unconstitutional policies or widespread practices that cause a constitutional injury).

Finally, although Plaintiff did not respond to Defendant Prange's motion for summary judgment, there is no evidence that Prange, a medical furlough clerk, was involved in any medical decisions involving Plaintiff (Doc. 83, p. 2 at ¶¶ 4-7). *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation). Accordingly, summary judgment will be granted in favor of Defendant Prange as well.

## Conclusion

For the foregoing reasons, the Motions for Summary Judgment (Docs. 83, 85) are **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: May 16, 2023**

**STACI M. YANDLE**
**United States District Judge**